UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DAMMEAN R. MOSS,

                Plaintiff,

v.

TERRY WILKINS, et al.,

                Defendants.

_____/

Case No. 2:25-cv-177

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Wilson and Washington.  The Court will also dismiss, for failure

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

to state a claim, the following claims against the remaining Defendants Wilkins and

Lorendo: First Amendment retaliation claims against Defendant Wilkins; Eighth

Amendment claims concerning placement in the restraint chair and denial of a

shower, clean clothing, and shoes; Eighth and Fourteenth Amendment claims

regarding the Incentives in Segregation Program; claims regarding Plaintiff's use of

the grievance process; and official capacity claims.  Plaintiff's First Amendment

retaliation claims against Defendant Lorendo, and his Eighth Amendment excessive

force claims against Defendants Lorendo and Wilkins remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of

Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga

County, Michigan.  The events about which he complains occurred at that facility.

Plaintiff sues the following Defendants in their official and individual capacities:

AMF Active Warden Terry Wilkins, AMF Sergeant Unknown Lorendo, AMF

Residential Unit Manager T. Wilson, and MDOC Director Heidi Washington.

(Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that, on May 9, 2025, Defendant Lorendo told Plaintiff that he

was being enrolled in the voluntary "incentive program."  (*Id.*, PageID.4.)  When

Plaintiff told Defendant Lorendo that he refused to participate in the incentive

program, Defendant Lorendo became angry and told Plaintiff that he would make

Plaintiff "suffer" if Plaintiff did not agree to the rules of the program, which include

limiting telephone use to 15 minutes per week and not possessing "allowable

property," such as a television.  (*Id.*)  Plaintiff alleges that the incentive program also includes stages that do not include formal hearings.  (*Id.*)

Defendant Lorendo left Plaintiff in segregation and returned 15 minutes later with riot gear and a video camera.  (*Id.*)  Plaintiff claims that he was being fully compliant and respectful when officers stuck a metal pole in Plaintiff's food slot.  (*Id.*, PageID.5.)  Defendant Lorendo then told Plaintiff that Defendant Wilkins authorized him to use a chemical agent before spraying Plaintiff with a chemical agent directly in the face through the food slot.  (*Id.*)  Plaintiff was instructed to strip naked and to raise his hands above his head and "drop the weapon" even though he was not holding any weapon.  (*Id.*)  He was then placed in shackles and handcuffs, given his clothing that had been covered in the chemical agent, and placed in a restraint chair by "several officers."  (*Id.*)  Plaintiff asked for a shower and shoes but was not provided with the shower and shoes until May 12, 2025, and May14, 2025, respectively.  (*Id.*)  Plaintiff filed a grievance on May 11, 2025.  (*Id.*)  On May 15, 2025, Plaintiff received clean clothing from "property."  (*Id.*)

Plaintiff alleges that, following the May 9, 2025, incident, he has been forced to participate in the incentive program in which Plaintiff was deprived of his television for 30 days and prohibited from using his JPay account for 50 days.  (*Id.*)  Plaintiff also alleges that he has been "threatened" and "hindered" in his use of the grievance process.  (*Id.*)  On June 4, 2025, an unknown person wrote on Plaintiff's desk, "enough with complaints n***** or else." (*Id.*)

Plaintiff has filed multiple grievances alleging "excessive force," "retaliatory action," and "cruel and unusual punishment." (*Id.*, PageID.7.) He alleges that documents related to his grievances have come up missing, and that he has been prevented from exhausting his claims through the administrative grievance system. (*Id.*)

Finally, Plaintiff states that he has contacted Defendant Wilson and Wilkins regarding the "conditions in segregation," the May 9, 2025, use of force, and incidents in which chemical agents were deployed against other prisoners. (*Id.*)

At the end of Plaintiff's statement of "legal claims," Plaintiff suggests that he will be irreparably injured unless the "court grants the declaratory judgment and injunctive relief which Plaintiff seeks." (*Id.*, PageID.8.) In the section of the complaint where Plaintiff sets forth his request for relief, however, Plaintiff does not mention what rights he is asking the Court to declare or what conduct he is asking the Court to enjoin. (*Id.*, PageID.9.) Put differently, Plaintiff never identifies the declaratory or injunctive relief he seeks. Instead, he states only that he seeks compensatory, nominal, and punitive damages. (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of

6

action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Retaliation Claims

Plaintiff alleges that, after telling Defendant Lorendo that he would not voluntarily participate in the incentive program, Defendant Lorendo became angry and orchestrated a plan which culminated in Defendant Lorendo spraying Plaintiff with a chemical agent.  (Compl., ECF No. 1, PageID.5.)  Plaintiff further alleges that Defendant Wilkins authorized Defendant Lorendo's use of force, and that Defendant Wilson failed to correct instances of "possible retaliation."  (*Id.*, PageID.5, 8.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, the Court will assume for screening purposes that Plaintiff engaged in protected conduct by orally voicing his concerns and complaints regarding participation in the incentive program.  *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).  Therefore, accepting Plaintiff's well-pleaded factual allegations as true, the Court will allow Plaintiff to proceed with his First Amendment retaliation claim

against Defendant Lorendo.     However, Plaintiffs' retaliation claims against Defendants Wilkins and Wilson will be dismissed.

First, as to Defendant Wilkins, Plaintiff alleges only that Defendant Wilkins authorized Defendant Lorendo's use of force. Plaintiff does not, however, plead facts that would plausibly suggest that Defendant Wilkins was aware of Plaintiff's protected activity at the time.  Indeed, Plaintiff's complaint is devoid of any facts concerning Defendant Wilkins' knowledge at the time that he authorized the use of force, let alone Defendant Wilkins' motivation for authorizing force.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  However, "because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted).  Therefore, "alleging merely the ultimate fact of retaliation is insufficient."   *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579-80

9

(6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).  Therefore, the Court will dismiss Plaintiff's claims of First Amendment retaliation against Defendant Wilkins and address Plaintiff's claims against Defendant Wilkins under an Eighth Amendment standard, below.

Plaintiff also faults Defendant Wilson for not correcting possible instances of retaliation.  However, Plaintiff does not allege that Defendant Wilson was involved in the events of May 9, 2025.  Instead, it appears that Plaintiff seeks to hold Defendant Wilson liable in Defendant Wilson's supervisory capacity as Resident Unit Manager.  However, government officials, such as Defendant Wilson, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the

10

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege that Defendant Wilson encouraged or condoned any allegedly unconstitutional conduct, or authorized, approved, or knowingly acquiesced in that conduct such that it could be said that Defendant Wilson caused the May 9, 2025, alleged violation of Plaintiff's constitutional rights. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Wilson.

### B.    Eighth Amendment Excessive Force Claims

Plaintiff alleges that Defendant Lorendo used excessive force against him when Defendant Lorendo sprayed Plaintiff with a chemical agent while "Plaintiff was not violating any prison rule nor acting disrespectful in any way." (Compl., ECF No. 1, PageID.8.)  As discussed above, Plaintiff claims that Defendant Lorendo's actions were authorized by Defendant Wilkins.  (*Id.*)  He also alleges that he told Defendant Washington of the "unjustified" "gassing of other inmates" during her walkthrough of the facility and that Defendant Washington violated Plaintiff's Eighth Amendment rights by "aiding and abetting the facilit[y's] actions."  (*Id.*, PageID.7, 8.)

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).  Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."  *Id.*  However, not every shove or restraint gives rise to a constitutional violation.  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'"  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*,

43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).  The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Taking Plaintiff's allegations as true as is required at this stage, and drawing all reasonable inferences in his favor, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Wilkins and Lorendo on screening. However, Plaintiff fails to state an Eighth Amendment claim against Defendant Washington.

Plaintiff does not allege that Defendant Washington was personally involved in the events of May 9, 2025. Instead, it appears that Plaintiff seeks to hold Defendant Washington liable because of her supervisory position as Director of the MDOC. As discussed in detail above, Defendant Washington may not be held liable for the unconstitutional conduct of her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676. She also may not be held liable based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888

Here, Plaintiff fails to allege that Defendant Washington was aware of the events of May 9, 2025, before or at the time of Defendant Lorendo's use of force such that it could be said that Defendant Washington encouraged or condoned any allegedly unconstitutional conduct, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff offers nothing more than conclusory allegations that Defendant Washington "aid[ed] and abbett[ed] the facilit[y's] actions." But conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendant Washington.

### C.      Eighth Amendment Claims Concerning Placement in Restraint Chair and Denial of a Shower, Clean Clothing, and Shoes

Plaintiff alleges that, after being sprayed with a chemical agent, "Plaintiff was placed in a 'restraint chair' and hauled to segregation (2 block) by several officers." (Compl., ECF No. 1, PageID.6.)  Once there, Plaintiff requested clean clothing and shoes and complained of burning from the chemical agent.  (*Id.*)  Plaintiff was eventually given clean clothing from "property."  (*Id.*)

As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544.

Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were personally involved in placing Plaintiff in the restraint chair or denying Plaintiff a shower, clean clothing, or shoes.  While Plaintiff references "several officers," this is insufficient to implicate any named Defendant as "[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ."  *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).  And, as discussed above, Plaintiff fails to allege that any Defendant with supervisory responsibilities encouraged or condoned the foregoing actions, or authorized, approved, or knowingly acquiesced in the conduct of the unidentified "several officers" or others such that it could be said that they caused the conduct.

15

Thus, to the extent alleged, Plaintiff fails to state an Eighth Amendment claim against any named Defendant premised upon Plaintiff's placement in the restraint chair, or the denial of a shower, clean clothing, or shoes.

### D.    Claims Regarding Incentives in Segregation Program

Plaintiff seeks to hold Defendants liable for his forced participation in the "incentive program." He alleges that he was forced to participate in the program despite it being "a voluntary program (per policy and procedure," that he has been deprived of privileges, including the use of his television for 30 days, and the use of his JPay account for 50 days, in connection with the program, and that the program lacks formal hearings. (Compl., ECF No. 1, PageID. 4, 6–7.) The Court will construe Plaintiff's allegations as raising both Eighth Amendment and Fourteenth Amendment claims.

### 1.    Forced Participation

Plaintiff claims that Defendants have denied Plaintiff the "right" to choose whether to participate in the incentive program. In support of his claim, Plaintiff points to MDOC "policy and procedure." The MDOC policy directive regarding segregation standards describes the Incentives in Segregation Program (IISP) as follows:

> The IISP program is a six stage progression of behavior expectations and incentives to encourage appropriate conduct by the prisoner. Prisoners in the program will have a clear understanding of the conduct that is expected from them for successful progression through and completion of the program. Staff shall look at the prisoner's progress in meeting these expectations when making behavior-based recommendations for or against the prisoner's reclassification. Prisoners who have satisfactorily completed the program shall be considered for reclassification.

16

MDOC Policy Directive 04.05.120 ¶ QQQ (eff. June 1, 2019).[2]  To the extent Plaintiff contends he is entitled to relief because the Defendants' actions violated MDOC policy, he fails to allege a constitutional claim.  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar*, 457 U.S. at 9242).  Section 1983 does not provide redress for a violation of a state law.  *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166; *see also Laney*, 501 F.3d at 580–81 & n.2 (6th Cir. 2007).  As a result, the Court will construe Plaintiff's complaint of forced participation as raising a Fourteenth Amendment claim for deprivation of liberty without due process of law.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."  *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc.*

---

[2] Plaintiff specifically refers to and relies upon MDOC policy in his complaint. (Compl., ECF No. 1, PageID.4.) The Court takes judicial notice of the MDOC policy directive in effect at the time of the events alleged in Plaintiff's complaint. The MDOC's policy directives are a proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' "); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) (noting that "a [c]ourt may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"). The Court notes that taking judicial notice of the policy language says nothing about whether Defendants complied with the policy.

*v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

There was a time when identifying protected interests focused on the mandatory character of the language in corrections department policies—in this case language giving prisoners the option to choose to participate in the IISP.  That time has passed.  The Sixth Circuit Court of Appeals described the shift in *Bethel v. Jenkins*, 988 F.3d 931 (6th Cir. 2021), as follows:

> Before the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995), prison regulations were found to create protected liberty interests when those regulations "used language of an unmistakable mandatory character," such as, for example, "requiring that certain procedures 'shall,' 'will,' or 'must' be employed." *Hewitt v. Helms*, 459 U.S. 460, 471 (1983). Accordingly, in *Spruytte v. Walters*, we found, based on *Hewitt*, that a Michigan prison regulation created a protected interest to receive any book not deemed to be a security threat because the regulation contained "specific, substantive criteria restrict[ing] officials' discretion." 753 F.2d 498, 507–08 (6th Cir. 1985), *abrogation recognized by Virgili v. Gilbert*, 272 F.3d 391 (6th Cir. 2001). However, in *Sandin*, the Supreme Court explicitly rejected the approach from *Hewitt* and held that liberty interests arising from state prison regulations are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293 (citations omitted).

*Bethel*, 988 F.3d at 942–43 (footnote omitted)

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  515 U.S.

472, 484 (1995).  According to *Sandin*, a prisoner is entitled to the protections of due process only when the "duration of his sentence" is at stake or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was involuntarily enrolled in AMF's Incentives in Segregation Program.  There is no suggestion that the IISP participation has any impact on sentence duration; thus, to show a due process violation, Plaintiff must demonstrate that the resulting harsh conditions of the program constitute atypical and significant hardships.

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29.  With respect to a prisoner's detention in segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant.  *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).  Here, assuming that

Plaintiff remains in IISP, he has been in the program for less than a year and, therefore, his claims do not implicate any liberty interest.

Moreover, this Court has repeatedly held that the segregation conditions in the IISP at AMF do not constitute atypical and significant hardships.  *See, e.g., Jamerson v. Taskila*, No. 2:22-cv-98, 2022 WL 1769085 (W.D. Mich. June 1, 2022) (rejecting a claim that denial of telephone privileges because the privilege is a later-stage IISP incentive violates a prisoner's First Amendment, Eighth Amendment, or Fourteenth Amendment due process rights); *Bailey v. Skytta*, No. 2:17-cv-187, 2018 WL 1773223 (W.D. Mich. Apr. 13, 2018) (rejecting prisoner's claim that forced participation in IISP violated the prisoner's due process rights); *Jackson v. Huss*, No. 1:14-cv-426, 2015 WL 5691026 (W.D. Mich. Sept. 28, 2015) (rejecting prisoner's claim that forced participation in IISP was an adverse action taken in retaliation for protected conduct); *Patterson v. Heyns*, No. 2:14-cv-118, 2014 WL 5392057 (W.D. Mich. Oct. 23, 2014) (rejecting a claim that forced participation in IISP and the resulting deprivation of a television set or commissary privileges until the prisoner reached a higher IISP level violated the prisoner's due process rights or Eighth Amendment rights); *Butts v. McKeon*, No. 2:12-cv-48, 2012 WL 2089960 (W.D. Mich. June 8, 2012) (rejecting a claim that forced participation in IISP and the resulting deprivation of a television set until the prisoner reached a higher IISP level violated the prisoner's due process rights); *Royster v. Sweeney*, No. 2:10-cv-202, 2011 WL 124514 (W.D. Mich. Jan. 13, 2011) (same).

Plaintiff has not alleged any facts to suggest that the conditions he faces are any worse than those faced by the other prisoner-plaintiffs who raised the same claim or any worse than the conditions in segregation generally. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468 (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Plaintiff has failed to allege any extreme circumstances that might render his time in the IISP an atypical or significant hardship. Accordingly, Plaintiff has failed to state a claim that compelling him to participate is a deprivation of liberty that would be protected by due process.

### 2.    Conditions of IISP

Plaintiff also contends that the conditions in the IISP rise to the level of cruel and unusual punishment and, therefore, violate the Eighth Amendment. However, placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although Plaintiff has been denied certain privileges as a result of his stay in administrative segregation and his placement in the IISP, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges due to administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*,

21

427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795.  As a result, Plaintiff fails to state an Eighth Amendment claim relating to the IISP.

### E.    Claims Regarding Plaintiff's Use of the Grievance Process

Plaintiff further claims that he has been denied proper use of the prison's grievance process.  (Compl., ECF No. 1, PageID.6–7.)  He alleges that he has been "threatened" and "hindered" in his use of the grievance process, that, on June 4, 2025, an unknown person wrote on Plaintiff's desk, "enough with complaints n***** or else," that his documents have come up missing, and he has been prevented from exhausting his grievances.  (*Id.*)  These allegations do not give rise to any constitutional claim.

Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure.  *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, the alleged conduct by Defendants and others could not have deprived Plaintiff of due process.

Additionally, Plaintiff's right to petition government is not violated by any failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any actions by Defendants related to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977), *overruled in other part by Lewis v. Casey*, 518 U.S. 343

23

(1996).    The exhaustion requirement only mandates exhaustion of *available* administrative remedies.    *See* 42 U.S.C. § 1997e(a).    If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.    *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Finally, to the extent that any Defendant rejected Plaintiff's grievances, that rejection would not somehow render them liable for the complaint raised in the grievance.    As noted above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.    *See Shehee*, 199 F.3d at 300.

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims regarding his use of the grievance process.

### F.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities.    A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC.    *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).    The states and their departments, such as the MDOC, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute.    *See*

24

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff principally seeks monetary damages. (Compl., ECF No. 1, PageID.9.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia*

25

*Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.")  The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  In the present action, Plaintiff's surviving First Amendment retaliation and Eighth Amendment excessive force claims relate solely to past harm, not future risk of harm.  Therefore, Plaintiff does not seek relief properly characterized as prospective and his claims do not fit within the *Ex parte Young* exception.  *See Ladd*, 971 F.3d at 581.  Accordingly, The Court will dismiss all of Plaintiff's official capacity claims.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*.  Having conducted the review required by the PLRA, the Court determines that Defendants Wilson and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Wilkins and Lorendo: First Amendment retaliation claims against Defendant Wilkins, Eighth Amendment claims concerning placement in the restraint chair and denial of a shower, clean clothing, and shoes, Eighth and Fourteenth Amendment claims regarding the Incentives in Segregation Program, claims regarding Plaintiff's use of the grievance process, and official capacity claims.  Plaintiff's First Amendment

retaliation claims against Defendant Lorendo, and his Eighth Amendment excessive force claims against Defendants Lorendo and Wilkins remain in the case.

An order consistent with this opinion will be entered.


Dated:  August 7, 2025                          /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge